UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

PRUDENCE GILL,

    Plaintiff,

v.

PNC BANK, NATIONAL ASSOCIATION,
SALLIE MAE, INC.,
and
UNIVERSITY OF MARYLAND,

    Defendants.

Civil Action No. TDC-14-0677

**MEMORANDUM OPINION**

    This common-law fraud and negligence action is before the court on Defendant University of Maryland's Motion to Dismiss. ECF No. 31. Having reviewed the pleadings, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motion is GRANTED, and all claims against the University of Maryland are DISMISSED.

**BACKGROUND**

    For purposes of a motion to dismiss, the Court accepts as true the well-pled, non-conclusory factual allegations in a plaintiff's complaint. *See Kearns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (articulating this standard for Fed R. Civ. P. 12(b)(1) motions); *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011) (articulating this standard for Fed R. Civ. P. 12(b)(6) motions).

Plaintiff Prudence Gill ("Gill") is a former University of Maryland ("the University") student whose mother passed away in July 2012.[1] Am. Compl. ¶¶ 9, 22. While going through her mother's belongings, Gill discovered that her mother had taken out student loans, opened at least one bank account, and opened several credit card accounts, all in Gill's name and without Gill's knowledge. Id. ¶ 10. As relevant to this case, Gill discovered that her mother had taken out about $140,000 in student loans from Sallie Mae in Gill's name. Id. ¶ 19. Gill, who attended the University on a cheerleading scholarship, did not apply for those loans, did not sign the underlying loan applications, never presented any photo identification to the University or Sallie Mae in connection with these applications, and was never contacted about the applications by the University or Sallie Mae. Id. ¶¶ 24-26, 31-33. Sallie Mae approved the loans and disbursed the funds to the University. Id. ¶ 28. The University in turn disbursed the funds to Gill's mother. Id. Gill never received any portion of the $140,000 in loan money. Id. ¶ 30. Instead, Gill's mother deposited the loan proceeds into a bank account at PNC Bank that she opened in Gill's name. Id. ¶ 13, 27. Gill learned of the account only after her mother's death. Id. ¶ 13. Gill did not sign any documents authorizing the opening of the account, and PNC Bank opened the account without ever asking Gill's mother for photo identification or otherwise verifying her identity. Id. ¶¶ 14-18.

At some point, the loans became delinquent, and Sallie Mae informed the credit reporting agencies of that delinquency. Id. ¶¶ 81, 83. Sallie Mae sent that negative information to the credit agencies without any prior notice to Gill. Id. ¶ 83. When Gill discovered the negative information, she filed a dispute with Sallie Mae about the delinquency reports, but Sallie Mae

---

[1] The Amended Complaint does not indicate when Gill was a student at the University of Maryland.

refused to retract or amend the information. *Id.* ¶ 81. Gill then filed a fraud report with Sallie Mae, but Sallie Mae refused to investigate her claim. ¶ 82. The continued delinquency information on Gill's credit report has had a negative impact on her credit score and her opportunity to obtain credit lines or lower interest rates on existing lines of credit. *Id.* ¶ 84.

On March 7, 2014, Gill filed a Complaint in this Court, which she amended on May 22, 2014.[2] ECF Nos. 1 & 19. Gill pleads six causes of action: (1) fraud against all defendants, (2) negligence against all defendants, (3) a civil conspiracy between PNC Bank and Sallie Mae, (4) a civil conspiracy between PNC Bank and the University, (5) violation of Uniform Commercial Code ("UCC") § 3-406 by all defendants, and (6) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by Sallie Mae. Gill asserts that this Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332, which, in relevant part, gives federal district courts original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. As to this basis, Gill asserts that she resides in Maryland, that PNC Bank is headquartered in Pennsylvania, that Sallie Mae is headquartered in Virginia, and that the University is located in Maryland. Am. Compl. ¶¶ 4-7. Gill also claims that the amount in controversy exceeds $75,000. *Id.* ¶ 2.

On June 13, 2014, the University filed a Motion to Dismiss and a Memorandum in Support of that Motion. ECF Nos. 31 & 31-1. In the Memorandum, the University contends that this Court lacks subject-matter jurisdiction over Gill's claims against the University, that the

---

[2] Gill originally filed suit against PNC Bank, Sallie Mae, and the University of Maryland Enterprise Corporation ("UMEC"). ECF No. 1. She then amended her Complaint to add the University of Maryland as a defendant. ECF No. 19. On May 27, 2014, UMEC filed a Motion to Dismiss, ECF No. 20, in which it explained that UMEC is a "stand-alone real estate investment corporation" that has nothing to do with the general operations of the University of Maryland. Mot. at 2. In response to the Motion, Gill voluntarily dismissed her claims against UMEC. ECF No. 28.

3

University is immune to suit under the Eleventh Amendment, and that Gill fails to state a claim against the University upon which relief can be granted. Mem. at 2. More specifically, as to subject-matter jurisdiction, the University explains that it is an instrumentality of the state of Maryland, and as a state entity "cannot be a party to a diversity action" brought by a citizen. Mem. at 4. The University acknowledges that this Court does have federal-question jurisdiction, *see* 28 U.S.C. § 1331, over Gill's FCRA claim against Sallie Mae, but argues that there is no supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Gill's non-federal claims because Sallie Mae's reporting of Gill's payment history on the student loans involves facts "far removed from" the claims about the origination of the loans. Mem. at 5-6. As to its Eleventh Amendment immunity, the University asserts that Maryland has waived its sovereign immunity to suit in a tort action only if the action is filed in a Maryland state court. Mem. at 6.

On June 27, 2014, Sallie Mae[3] filed a Response to the University's Motion addressing only the University's subject-matter jurisdiction argument. ECF No. 39. Noting that this Court has federal-question jurisdiction over Gill's FCRA claim (alleged against only Sallie Mae), Sallie Mae contends that this Court can exercise supplemental jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same "case or controversy" as the FCRA claim. Sallie Mae Resp. at 3.

On June 30, 2014, Gill filed her Response to the University's Motion, ECF No. 40, in which she insists that the University is "an indispensable party to this action" and reiterates Sallie Mae's argument that this Court has supplemental jurisdiction over her non-federal question claims because her "state claims are intertwined with the federal harm to [her]." Gill

---

[3] Sallie Mae filed this Response under the name of its successor entity, Navient Solutions, Inc. Sallie Mae Resp. at 1. To avoid confusion, this defendant will continue to be referred to in this Memorandum Opinion as "Sallie Mae."

4

Resp. at 3, 4. As to the University's Eleventh Amendment immunity argument, Gill notes that in conversations with counsel from the Maryland Attorney General's Office about amending the complaint to add the University as a party, counsel indicated that the University was "open to ... assist in the resolution of this matter." *Id.* at 3. Gill interprets those conversations as "representations that [the University] was not going to invoke immunity," and concludes that the University therefore "should not be allowed" to raise that defense. *Id.* at 5.

On July 10, 2014, the University filed its Reply to Gill's Response in which it reiterates the arguments regarding subject-matter jurisdiction set forth in its Motion to Dismiss. ECF No. 42. As to Gill's contention that the University indicated it was not going to invoke immunity, the University first contests Gill's representation, then notes that a state's immunity can be abrogated only by federal or state statute, and therefore is not something that can be invoked at the University's discretion. Reply at 3 n.1.

On August 22, 2014, Sallie Mae filed its Answer to Gill's Complaint. ECF No. 48. Sallie Mae denies all of Gill's allegations and pleads multiple affirmative defenses.

**DISCUSSION**

**I. Subject-Matter Jurisdiction**

**A. Original Jurisdiction**

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Because questions of subject-matter jurisdiction concern the court's power to hear the case, they must be resolved

before the court can turn to the sufficiency or merits of a claim.[4] *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible without exception." (internal citation and quotation marks omitted)). Federal courts have original jurisdiction over civil cases, with some rare exceptions not present here, in two instances: (1) under federal-question jurisdiction, meaning that the case involves an issue of federal law, *see* 28 U.S.C. § 1331, or (2) under diversity jurisdiction, meaning, as relevant here, that the parties in the case are citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332.

Because it is the plaintiff who chooses the forum, it is the plaintiff's burden to show that subject-matter jurisdiction exists. *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988). Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. A challenge to subject-matter jurisdiction may take two forms: (1) a facial challenge, asserting that the allegations pleaded in the complaint, taken as true, are insufficient to establish subject-matter jurisdiction, or (2) a factual challenge, asserting that the jurisdictional allegations of the complaint are untrue or that facts outside the four corners of the complaint establish that there is no subject-matter jurisdiction. *Kerns v. United States*, 585

---

[4] Whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction [is] a question" that the Supreme Court "ha[s] not decided." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 391 (1998). *See Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) ("While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings, we have recognized that it is not coextensive with the limitations on judicial power in Article III."). With the relationship between Eleventh Amendment immunity and subject-matter jurisdiction unsettled, and in light of the Supreme Court's "inflexible" insistence that federal courts must resolve subject-matter jurisdiction questions first, *see Steel Co.*, 523 U.S. at 95, the Court will address the University's Eleventh Amendment immunity argument only after and separately resolving the question of this Court's subject-matter jurisdiction.

F.3d 187, 192 (4th Cir. 2009) (citation omitted). If a defendant raises the first argument, then the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and the motion "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*; *Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

Here, the University contends that Gill's jurisdictional allegations, taken as true, fail to establish subject-matter jurisdiction. The Court agrees. Gill's initial claim was that her case could be heard in federal court on the basis of diversity jurisdiction. For purposes of diversity jurisdiction, "[s]tates are not citizens," and it is "well settled that a suit between a state and a citizen ... of another state is not between citizens of different states." *Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 487 (1894); *see Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973). "[A] public entity created under state law" that functions as "'the arm or alter ego of the State,' is likewise not a citizen for purposes of diversity jurisdiction." *South Carolina Dept. of Disabilities and Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008) (quoting *Moor*, 411 U.S. at 717). The University fits squarely in this category. Under Maryland law, the University is an "instrumentality of the State and a public corporation," and "an independent unit of State government." Md. Code, Education, § 12-102(a)(2)-(3); *Maryland Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 265 (4th Cir. 2005) ("[T]he University is an alter ego of Maryland"). Because it is an arm of the State, the University cannot be a citizen of a State and therefore "is not competent to sue, or liable to be sued, in federal court" on the basis of diversity jurisdiction. *Maryland Stadium Auth.*, 407 F.3d at 265 (internal citation and quotation marks omitted).

Even in the absence of this principle, Gill's diversity jurisdiction argument would be undermined by her own allegations. In the Amended Complaint, Gill alleges that she is a resident of Maryland and that the University has its "usual place of business" in College Park, Maryland. *See* Am. Compl. ¶¶ 4, 7. Thus, under the facts asserted in her own Complaint, Gill and the University, if classified as a "public corporation," Md. Code, Education, § 12-102(a)(2), are not citizens of different states. *See* 28 U.S.C. §1332(c)(1) (2012) (stating that a corporation is a citizen of every state in which it has been incorporated or where it has its principal place of business). Gill notes that PNC Bank is a citizen of Pennsylvania, and Sallie Mae is a citizen of Virginia, *see* Am. Compl. ¶¶ 5-6, but the diversity of citizenship as to the other defendants does not cure the problem. For a federal court to have original jurisdiction under 28 U.S.C. § 1332, *complete* diversity is required, meaning that no party on one side of a suit can be a citizen of the same state as a party on the other side. *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005). Gill thus cannot bring suit against the University in federal court on the basis of diversity jurisdiction.

Although Gill alleges a federal claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, against Sallie Mae, she does not assert any federal cause of action against any other defendant and therefore cannot establish federal-question jurisdiction over the University. Gill thus fails to establish that this Court has any original jurisdiction over her claims against the University.

### B. Supplemental Jurisdiction

With no original jurisdiction over her claims against the University, all of which are state-law claims, Gill must turn to supplemental jurisdiction as a basis for maintaining her suit in this Court. 28 U.S.C. § 1367(a) gives federal courts supplemental jurisdiction "over all other

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." To arise out of the same case or controversy, the state-law and federal-law claims must derive from a "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). For reasons of judicial economy, even a "loose factual connection between the claims" is enough to meet this standard and thus to support the exercise of supplemental jurisdiction over the state claims. *Posey v. Calvert Cnty. Bd. of Educ.*, 262 F. Supp. 2d 598, 600 (D. Md. 2003) (internal quotation marks omitted). When the state and federal claims are "separately maintainable and determinable without any reference to the facts alleged ... with regard to the other count," supplemental jurisdiction is inappropriate. *Hales v. Winn–Dixie Stores, Inc.*, 500 F.2d 836, 848 (4th Cir. 1974).

In this case, Gill's FCRA claim necessarily implicates her state-law claims. Gill's state-law claims are based on her contention that it was her mother who applied for and received the $140,000 in student loans from Sallie Mae, and that her mother took out those loans without Gill's permission or knowledge. Gill's FCRA claim relies on facts arising from the continuation of this chain of events: Gill asserts that she informed Sallie Mae that the loans were fraudulent, but that Sallie Mae refused to credit that assertion, and instead continued to report the loans as delinquent. Because Sallie Mae continues to dispute Gill's assertion that the loans were fraudulently obtained, *see* Ans. at 3-4 & 12, a key component of Gill's FCRA claim—Gill's responsibility for paying back the loans—hinges on resolution of the central issue in Gill's state claims of whether those loans were fraudulently obtained. The state-law and federal-law claims thus share a common nucleus of operative fact, and this Court may exert supplemental jurisdiction over the state-law claims.

However, whether this Court may exert supplemental jurisdiction is not the end of the inquiry. Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers*, 383 U.S. at 726. Thus, a district court may decline to exercise supplemental jurisdiction over the state law claims in an action if those claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). The Supreme Court has explained that district courts should decline to exercise supplemental jurisdiction if the state issues substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *United Mine Workers*, 383 U.S. at 726. "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage," a district court "may fairly" decline to exercise supplemental jurisdiction over the state claim. *Id.* at 727; *see Diven v. Amalgamated Transit Union Int'l*, 38 F.3d 598, 602 (D.C. Cir. 1994) (explaining that state law predominates when "the state law claims are more complex or require more judicial resources to adjudicate *or are more salient in the case as a whole than the federal law claims*") (emphasis in original) (internal citation and quotation marks omitted)).

That is the situation here. Of the six causes of action Gill pleads, only one of them is a federal claim, and she pleads that cause of action against only one of the three defendants. Although Gill's federal claim relies on resolution of her state claim, that interaction is one-way. The facts related to Sallie Mae's reporting of the debt to the credit agencies are wholly separate from, and will shed no light on, any liability of the University relating to the origination of the loan. Gill therefore asks this Court to use supplemental jurisdiction to hear what amounts to the heart of her case, based on the presence of a federal cause of action that is essentially tacked on to the state-law claims. Because such a proposition unduly strains the meaning of

"supplemental," this Court declines to exercise supplemental jurisdiction over the state-law claims against the University. *See 75-80 Properties, LLC v. Bd. Of Cnty. Comm'rs of Frederick Cnty, Maryland*, No. RDB-09-2977, 2010 WL 917635 at *5 (D. Md. Mar. 10, 2010) (declining to exercise supplemental jurisdiction because the plaintiff's two federal claims were "essentially tacked on" to the seven state-law causes of action).

### II. Eleventh Amendment Immunity

Even if this Court were convinced that exercising supplemental jurisdiction over the state-law claims against the University is appropriate, Gill's suit still could not proceed as pleaded. Under the Eleventh Amendment to the United States Constitution, a state and its instrumentalities are immune from suits in federal court brought by its citizens or the citizens of another state. U.S. Const. amend. XI; *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A state may waive this immunity and consent to suit against it in federal court, but such a waiver must be "unequivocally expressed." *Pennhurst*, 465 U.S. at 99. Although through the Maryland Tort Claims Act, the State of Maryland has waived its sovereign immunity for certain types of tort actions, it has done so only for actions brought in Maryland state courts. *See* Md. Code, State Gov't., § 12–104(a)(1) ("[T]he immunity of the State and of its units is waived as to a tort action, in a court of the State."). It has not waived its immunity under the Eleventh Amendment to suit for tort actions in federal court. *Proctor v. Washington Metro. Area Transit Auth.*, 990 A. 2d 1048, 1067 (Md. 2010) (holding that the Maryland Tort Claims Act "does not permit a claimant to file a claim [for a tort action] in federal court"); *see Pennhurst*, 465 U.S. at 99 ("A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." (emphasis in original)); *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011). As an instrumentality of the State of Maryland, therefore, the University is

11

immune to suit for tort actions in federal court. *See Maryland Stadium Auth.*, 407 F. 3d at 265 (explaining that the University has Eleventh Amendment immunity and therefore can be sued in tort only pursuant to the Maryland Tort Claims Act). *See also Bickley v. Univ. of Maryland*, 527 F. Supp. 174, 181 (D. Md. 1981) ("[T]he University of Maryland is an arm of the State partaking of the State's Eleventh Amendment immunity") (internal citations and quotations omitted)). *Cf. Univ. of Maryland v. Maas*, 197 A. 123, 124 (Md. 1938) (noting that it is "beyond question" that the University of Maryland is "an arm or agency of the state government" and thus is "entitled to immunity from suits as is the state itself").

Gill's contested allegation that the University, through counsel, indicated that it would not invoke immunity, does not alter this analysis. As the University notes, immunity is not something it has the discretion to use or abandon at will. *See* Reply at 3 n.1. A state's immunity can be abrogated only if its consent to suit has been "'unequivocally expressed' in the text of the relevant statute" through a "clear declaration." *Sossamon*, 131 S. Ct. at 1658 (quoting *Pennhurst*, 465 U.S. at 99, and *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 680 (1999)). Under this standard, the oral statements by counsel on behalf of the University cannot abrogate immunity; immunity can be abrogated only through legislative action.[5] Thus, even if this Court were to exercise supplemental jurisdiction over Gill's claims against the University, those claims would be barred by the Eleventh Amendment.

Based on the Court's rulings on subject-matter jurisdiction and Eleventh Amendment immunity, the Court need not address the University's arguments under Rule 12(b)(6). In light

---

[5] Even if counsel could waive immunity on behalf of the University, counsel's statement that the University was interested in "resolving this matter," Gill Resp. at 2, does not directly address the issue of immunity and thus cannot be deemed to be the clear, unequivocal waiver that the Supreme Court requires.

of these rulings, Gill's case cannot proceed intact against all defendants in federal court. It must either proceed in federal court without the University as a defendant, or it may be brought in its present form in state court.[6]

## CONCLUSION

For the foregoing reasons, the University's Motion to Dismiss is GRANTED. All claims against the University are accordingly DISMISSED.

Date: February 11, 2015

THEODORE D. CHUANG
United States District Judge

---

[6] Considering that, in Gill's estimation, the University is an indispensable party to this action, Gill Resp. at 3, Gill may find that a state-court action provides her with a more thorough and efficient resolution to her claims.